McBride, judge,
delivered the opinion of the court.
David Thompson brought his bill in chancery in the Callaway circuit *159 court, against Richard D Renoe, in which he alleges that at a sale of the public lands by the government of the United States, in the year 1819, one Philip Dirtin purchased a tract of land (describing it) containing about 180 acres at the price of $2 per acre, for whieh he paid at the time one-third of the purchase money and recived a credit for the remaining two-thirds ; that before the falling due of the said balance, to-wit in 1821 or 1822, Dirtin departed this life leaving a widow, Mary Dirtin, who subsequently paid the balance of the purchase money for the land ; that the patent issued in the name of Philip Dirtin; That the widow continued to reside on the land until the year 1840, when a petition was filed against her in the county court of Callaway county for a partition of said land, and at a subsequent term of that court, commissioners were appointed to allot and admeasure to the widow her part of said land, who after having made partition, reported the same to the county court, when the said court approved of and ratified the said partition. That in the year 1843, Mary Dirtin, for a valuable consideration, supposing the fee of said allotted land to be in her, sold, and by deed conveyed the same to the complainants, who went into possession and continued to hold the possession thereof, until the death of said Mary Dirtin, when he sold said land to one Bradley and put him in possession. That since the demise of said Mary, those claiming to be the heirs at law of Philip Dirtin deceased have proceeded to obtain partition of the real estate of said Philip, embracing the land purchased by complainant cf Mary Dirtin, and under an order of the county court, a sale has been made of the entire tract of land purchased by Philip Dirtin of the general government, (the same not being susceptible of division,) and Richard D. Renoe the defendant became the purchaser thereof, and now holds the lands against the rightful claim of the complainant, notwithstanding the said Renoe was fully advised of all the facts set forth in the bill. That by reason of the sale last aforesaid, the complainant has been forced to rescind his contract with Bradley.
To this bill the defendant filed a general demurrer, which, upon argument was sustained by the circuit court, when the case was brought to this court by writ of error.
The facts set out in the bill being admitted by the demurrer, the question is whether they make out a case which entitles the complainant to the aid of a court of equity.
It is conceded that if a stranger had voluntarily paid the balance due on the land, no trust would thereby have been created in his favor; for it is not in the power of an individual thus to raise a trust for his bene *160 fit; but it is considered that the widow in this case sustained to the subject a different relation. She was entitled, under the statute, to a dower interest in the land purchased by her husband, and this interest would have been lost to her unless the credit payments for the land were met according to the terms of the sale. If the administrator of Philip Dirtin had seen proper to pay the balance of the purchase money, then there would have existed no necessity for the widow to make the payment in order to save her dower. But if the administra* tor, either had not the means necessary, or having the means judged it most conducive to the interest of the estate, not to pay the balance, but let the land be forfeited for the non-payment, and to save her dower, the widow was compelled to raise the money and make the payments as they fell due, she is entitled by every principle of equity, either th a ratable proportion of the land thus paid for, or a lien upon it for the amount paid by her. Why is she not thus entitled? Her money has actually paid two-thirds of the purchase money for the land, and if she had not made the payments, it is probable that the amount paid by Philip Dirtin in advance for the land would have been lost to his estate.
The estate therefore, instead of losing any thing by her acts, has profited by them. The distributees of Philip Dirtin have no just cause to complain of this view of the subject, because the money paid by the widow constituted no part of Philip’s estate, which by course of law would have descended to them.
The facts charged in the bill, make out, under the foregoing views, a clear case of resulting trust, in favor of Mary Dirtin or those claim* ing under her, by bringing it within the rule that where an estate is paid for with the money of one individual and the title taken in the name of another, a trust arises in favor of the individual whose money has been used in the acquisition of the estate.
If we should regard Mary Dirtin as a tenant in common with the legatees of Philip Dirtin, and as having paid the balance of the purchase money, to save the land from forfeiture, her claim to indemnity from her co-tenants would be equally clear and conclusive. In either aspect, therefore, she is entitled to a ratable proportion of the land ac* quired by the purchase.
The bill further charges, that, the defendant Renoe, prior to his pur* chase, had notice that Mrs. Dirtin had paid, out of her funds, twdthirds of the purchase money for the land in controversy; taking a title, with a knowledge of these facts, Renoe becomes a trustee for her; and *161 the land in his hands, stands charged with the trust, as though no transfer had taken place.
We do not regard the proceedings in the circuit court, allotting her dower or making partition of the land (it being uncertain which object was in contemplation) as estopping her or those claiming under her, from setting up and insisting upon her claim as made in the bill. It is obvious enough, that the proceedings had in the county court were had under a misapprehension of the law governing the rights of widows to dower. The act of 1817 was in force at the death of Philip Dirtin, the husband, and under that act, the widow would only be entitled to a dower interest of one-half of the land ; whilst under the act in force at the time of the proceedings in the county court, the widow would be entitled to one-half of the land absolutely; and it was under this last act that the partition was made. If her rights had really been what the commissioners and the circuit court supposed them to be, and what she appears to have acquiesced in, then most likely no question would have arisen in this case; but, after a sale' of the land allotted to her, and her death, it is ascertained that if she held only a dower estate, unthe act of 1817, her estate had terminated, and the land would revert der to the legatees of Philip Dirtin.
The judgment of the circuit court should, for the reasons aforesaid, be reversed, and the case remanded to the circuit court for further proceedings to be had not inconsistent with this opinion.